Thomas P. Riley, SBN 194706
**LAW OFFICES OF THOMAS P. RILEY, P.C.**
First Library Square
1114 Fremont Ave.
South Pasadena, CA 91030

Tel:  626-799-9797
Fax:  626-799-9795
TPRLAW@att.net

Attorneys for Plaintiff
J & J Sports Productions, Inc.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **J & J Sports Productions, Inc.,**<br><br>**Plaintiff,**<br><br>v.<br><br>**Hortencia Bustamante Brito, et al.**<br><br>**Defendants.** | **CASE NO. 5:09-CV-01209-WDK**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S APPLICATION FOR DEFAULT JUDGMENT BY THE COURT** |

## INTRODUCTION

Plaintiff, J & J Sports Productions, Inc. (hereinafter "Plaintiff") is an international distributor of sports and entertainment programming.  By contract, Plaintiff purchased the domestic commercial exhibition rights to broadcast the *"Lethal Combination": Manny Pacquiao v. David Diaz, WBC Lightweight Championship Fight Program* telecast nationwide on Saturday, June 28, 2008.  This *Program* included the main event (between Manny Pacquiao and David Diaz) along with undercard (preliminary) bouts, televised replay, and color commentary, hereinafter collectively referred to as the "*Program*".

Plaintiff thereafter entered into sublicensing agreements with commercial entities throughout United States and its territories, wherein it granted limited public exhibition rights to these entities (sublicenses) for the benefit and entertainment of the patrons within their respective establishments (e.g., hotels, racetracks, casinos, taverns, bars, restaurants, social clubs,

1   etc.).  The interstate transmission of the Plaintiff's *Program* was encrypted and made available

2   only to Plaintiff's customers (commercial locations that paid Plaintiff the requisite closed-circuit

3   (commercial) license fees to exhibit the *Program*).

4   On Saturday, June 28, 2008, investigator Eli Gonzalez observed the unlawful exhibition

5   of the *Program* at the Defendants' commercial establishment.  Eli Gonzalez's observations were

6   later documented in a sworn affidavit now before this Honorable Court.  *See Declaration of*

7   *Affiant*.

8   On June 25, 2009, Plaintiff filed suit against Hortencia Bustamante Brito and Jose

9   Bulmaro Brito, individually and d/b/a Los Picantes Restaurant (hereinafter "Defendants") after

10   Plaintiff's efforts to resolve this matter informally failed.  The thrust of Plaintiff's Complaint

11   alleged that Defendants, and or their employees or agents unlawfully intercepted and intentionally

12   exhibited the *Program* at  Defendants' establishment for the purpose of direct or indirect

13   commercial advantage, thereby violating Section 605 of the Federal Communications Act of

14   1934, as well as Title 47 U.S.C. § 553.  Plaintiff's complaint also includes a pendent common-

15   law claim of conversion.

16   Neither the Defendants nor anyone acting on the Defendants' behalf filed an Answer or

17   any other responsive pleading to Plaintiff's duly served complaint.  Accordingly, on August 7,

18   2009 and August 18 2009, following Plaintiff's Request, the Court entered default against the

19   Defendants in this action

20   **WHEREFORE**, Plaintiff respectfully requests this Honorable Court now enter judgment

21   against the Defendants as prayed forth below.

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

# **TABLE OF CONTENTS**

Page

**INTRODUCTION** .	.	.	.	.	.	.	.	.	.	i

**ARGUMENT**	.	.	.	.	.	.	.	.	.	3

I.	PLAINTIFF IS ENTITLED TO STATUTORY DAMAGES AND ENHANCED DAMAGES UP TO THE MAXIMUM PERMISSIBLE UNDER THE UNITED STATES CODE	.	.	.	.	.	.	.	.	3

A.	Statutory Damages Under 47 U.S.C. § 605(e)(3)(C)(i)(II).	.	.	6

B.	"Enhanced" Damages Under 47 U.S.C. § 605(e)(3)(C)(ii).	.	9

C.	Nominal Damages Have Proven Insufficient To Combat Piracy.	.	14

II.	PLAINTIFF IS ENTITLED TO DAMAGES FOR CONVERSION.	.	15

**CONCLUSION**	.	.	.	.	.	.	.	.	.	16

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

## <u>CASES</u>

*Am. Cablevision of Queens v. McGinn,*
   817 F.Supp. 317 (E.D.N.Y. 1993)   .   .   .   .   .   .   10

*Cablevision Systems v. Seimon*,
   767 F.2d 1364 (9th Cir. 1985)   .   .   .   .   .   .   3

*Cox Cable Cleveland Area, Inc. v. King*,
   582 F. Supp. 379, 381 (E.D. Ohio 1983)   .   .   .   .   16

*Danning v. Lavine*,
   572 F.2d 1386 (9th Cir. 1978)   .   .   .   .   .   3

*Entertainment By J & J, Inc. v. Al-Waha Enterprises, Inc.*,
   219 F.Supp.2d 769 (S.D. Tex. 2002)   .   .   .   .   9, 13

*Fallaci v. New Gazette Literary Corp.*,
   568 F.Supp. 1172 (S.D.N.Y. 1983)   .   .   .   .   .   14

*F.W. Woolworth Co. v. Contemporary Arts, Inc.*,
   344 U.S. 228 (1952)   .   .   .   .   .   .   4

*Garden City Boxing Club, Inc. v. Batista*,
   2007 WL 4276836 (E.D.N.Y. 2007)   .   .   .   .   10, 13

*Garden City Boxing Club, Inc. v. Frezza*,
   476 F.Supp.2d 135 (D. Conn. 2007)   .   .   .   .   10, 11

*Garden City Boxing Club, Inc. v. Paquita's Café, Inc.*,
   2007 WL 2783190 (S.D.N.Y. 2007)   .   .   .   .   9

*Geddes v. United Financial Group*,
   559 F.2d 557 (9th Cir. 1977)   .   .   .   .   .   3

*Innovative Sports Marketing v. Medeles*,
   2008 WL 1758886 (S.D.Tex. 2008)   .   .   .   .   12

*International Cablevision, Inc. v. Sykes*,
   75 F.3d.123 (2d. Cir. 1996)   .   .   .   .   .   3

*J & J Sports Productions, Inc. v. Castrillon*,
   2009 WL 1033364 (E.D.N.Y. 2009)   .   .   .   .   14

-iv-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S
APPLICATION FOR DEFAULT JUDGMENT BY THE COURT – CASE NO. 5:09-cv-01209-WDK

*J & J Sports Productions, Inc. v. Drake,*
   2006 WL 2927163 (E.D.N.Y. 2006) .    .    .    .    .    .     10

*J & J Sports Productions, Inc. v. Esquivel,*
   2008 WL 4657741 (E.D.Cal. 2008) .    .    .    .    .    .     7

*J & J Sports Productions, Inc. v. Ferreyra,*
   2008 WL 4104315 (E.D.Cal. 2008) .    .    .    .    .    .     13

*J & J Sports Productions, Inc. v. Flores,*
   2009 WL 1860520 (E.D.Cal. 2009) .    .    .    .    .    .     8

*J & J Sports Productions, Inc. v. Garcia,*
   2009 WL 2567891 (S.D.Tex. 2009) .    .    .    .    .    .     10

*J & J Sports Productions, Inc. v. George,*
   2008 WL 4224616 (E.D.Cal. 2008) .    .    .    .    .    .     8

*J & J Sports Productions, Inc. v. Lang,*
   2008 WL 2917165 (W.D.N.Y.) .    .    .    .    .    .     14

*J & J Sports Productions, Inc. v. Lopez,*
   2008 WL 2915109 (E.D.Cal. 2008) .    .    .    .    .    .     9

*J & J Sports Productions, Inc. v. Man Thi Doan,*
   2008 WL 4911223 (N.D.Cal. 2008) .    .    .    .    .    .     14

*J & J Sports Productions, Inc. v. Manzano,*
   2008 WL 4542962 (N.D.Cal. 2008) .    .    .    .    .    .     14

*J & J Sports Productions, Inc. v. Medinarios,*
   2008 WL 4412240 (N.D.Cal. 2008) .    .    .    .    .    .     14

*J & J Sports Productions, Inc. v. Rubio,*
   2008 WL 4360883 (S.D.Tex. 2008) .    .    .    .    .    .     9

*Joe Hand Promotions, Inc. v. Cat's Bar, Inc.,*
   2009 WL 700125 (C.D. Ill. 2009) .    .    .    .    .    .     13

*Joe Hand Promotions, Inc. v. Chapa,*
   2009 WL 2215124 (S.D.Tex. 2009) .    .    .    .    .    .     12

*Joe Hand Promotions, Inc. v. Garcia,*
   546 F.Supp.2d 383 (W.D.Tex. 2008) .    .    .    .    .     10

*Joe Hand Promotions, Inc. v. Haddock,*
   2009 WL 2136117 (E.D.Cal. 2009) .    .    .    .    .    .     3, 11

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S
APPLICATION FOR DEFAULT JUDGMENT BY THE COURT – CASE NO. 5:09-cv-01209-WDK

*Joe Hand Promotions, Inc. v. Martinez*,
    2008 WL 4619855 (S.D.N.Y. 2008)  .    .    .    .    .    10

*Joe Hand Promotions, Inc. v. Tidmarsh*,
    2009 WL 1845090 (E.D.Cal. 2009)  .    .    .    .    .    7

*Kingvision Pay-Per-View, Ltd. v. Dosani*,
    2006 WL 3316988 (S.D.Tex. 2006)  .    .    .    .    .    8, 12

*Kingvision Pay-Per-View Ltd. v. Gadson*,
    2007 WL 2746780 (M.D.N.C. 2007)  .    .    .    .    .    9

*KingVision Pay-Per-View, Ltd. v. Guerra*,
    2007 WL 3001659 (S.D. Tex. 2007)  .    .    .    .    .    12

*Kingvision Pay-Per-View, Ltd. v. Gutierrez*,
    544 F.Supp.2d 1179 (D.Colo. 2008)  .    .    .    .    .    11

*Krueger v. Bank of America*,
    (1983) 145 Cal.App.3d 204, 193 Cal.Rptr. 322  .    .    .    15

*Lauretex Textile Corp. v. Allton Knitting Mills, Inc.*,
    519 F. Supp. 730 (S.D.N.Y. 1981)  .    .    .    .    .    4

*ON/TV of Chicago v. Julien*,
    763 F.2d 839 (7th Cir. 1985)  .    .    .    .    .    16

*Quincy Cablesystems, Inc. v. Sully's Bar*,
    640 F.Supp. 1159 (D.Ma. 1986)  .    .    .    .    .    16

*Subscription Television of Greater Washington v. Kaufman*,
    606 F. Supp. 1540 (D.D.C. 1985)  .    .    .    .    .    16

*Time-Warner Cable of N.Y. v. Googies Luncheonette, Inc.*,
    77 F.Supp.2d 485 (S.D.N.Y. 1999)  .    .    .    .    .    10

*U.S. v. Scott*,
    83 F. Supp. 280 (N.D. Miss. 1992)  .    .    .    .    .    4-6

## STATUTES AND RULES

United States Code

    47 U.S.C. § 605    .    .    .    .    .    .    .    passim

    42 U.S.C. § 553    .    .    .    .    .    .    .    passim

-vi-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S
APPLICATION FOR DEFAULT JUDGMENT BY THE COURT – CASE NO. 5:09-cv-01209-WDK

California Code of Civil Procedure

Cal. Civ. Code § 3336    .     .     .     .     .     .     .     15

**<u>MISCELLANEOUS</u>**

*U.S. Cong. & Admin. News*   .     .     .     .     .     .     .     4-6

*Wright, Miller & Kane, Federal Practice and Procedures*   .     .     .     .     3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **ARGUMENT**

I.     PLAINTIFF IS ENTITLED TO STATUTORY DAMAGES AND ENHANCED
DAMAGES UP TO THE MAXIMUM PERMISSIBLE UNDER THE UNITED
STATES CODE.

Once a default judgment is entered, "it generally is treated as a conclusive and final

adjudication of the issues necessary to justify the relief awarded and is given the same effect

between the parties as a judgment rendered after a trial on the merits." *Wright, Miller & Kane,*

*Federal Practice and Procedures* § 2684, p. 4-19-20.  In that regard, the Defendants' default

herein serves as an admission of Plaintiff's well-pled allegations of fact.  *Danning v. Lavine*, 572

F.2d 1386, 1388 (9th Cir. 1978); *Geddes v. United Financial Group,* 559 F.2d 557, 560 (9th Cir.

1977).  This standard has been applied to cases substantially similar to the one before this Court.

*See e.g. Joe Hand Promotions, Inc. v. Haddock*, 2009 WL 2136117 (E.D.Cal. 2009).

Accordingly, the only issue remaining to be decided in this case is the amount of damages,

attorneys' fees, and costs to which Plaintiff may be entitled to recover from the Defendant as a

result of the Defendant's unauthorized exhibition of Plaintiff's *Program*.

Title 47 U.S.C. Section 605 protects companies like Plaintiff's against the theft of

proprietary communications such as the instant *Program.  See Cablevision Systems v. Seimon*,

767 F.2d 1364 (9th Cir. 1985); *International Cablevision, Inc. v. Sykes*, 75 F.3d.123 (2d. Cir.

1996).  The majority of courts have found that Section 605 applies to cases where the end-user

offender obtained a proprietary broadcast by way of a satellite (rather than cable) television

programming system.

Unfortunately, in this particular action, because the Defendants have failed to respond to

Plaintiff's duly served complaint, Plaintiff cannot determine the precise means that the

Defendants used to receive the *Program* unlawfully.  Nevertheless, Plaintiff should not be

prejudiced because it cannot isolate the precise means of signal transmission the Defendants

used and respectfully submits its prayer for recovery of damages, attorneys' fees and costs

pursuant to Title 47 U.S.C.  Section 605, as it is inherently reasonable in this instance where the

Defendants have placed themselves in default for failing to answer or otherwise respond.

As a starting point, a party aggrieved under section 605 may, at its discretion, recover either actual or statutory damages.   47 U.S.C. § 605(e)(3)(C).  Pursuant to that section, the aggrieved party may recover "a sum of not less than $1,000 or more than $10,000, as the court considers just" for each violation.  47 U.S.C. § 605(e)(3)(C)(i)(II).  In addition, if the Court determines that a violation was committed "willfully and for purposes of direct or indirect commercial advantage or private financial gain," the Court may increase the award of damages by up to $100,000.00 for each violation.  47 U.S.C. § 605(e)(3)(C)(ii) (these damages have come to be referred to as "enhanced" damages).  Furthermore, the Court shall award full costs, including reasonable attorneys' fees.  47 U.S.C. § 605(e)(3)(B)(iii).  Because Plaintiff constitutes an aggrieved party under 47 U.S.C. section 605, *et seq.* (hereinafter "Statutes"), *see* 47 U.S.C. § 605(d)(6), Plaintiff is entitled to damages from the Defendants.

Los Picantes Restaurant is a commercial establishment, and, as such, could only have lawfully obtained the *Program* if Plaintiff had contracted with Defendants for the rights to show it.  However, this lawful approach was not taken.  Therefore, Defendants must have undertaken specific wrongful actions to intercept and/or receive and broadcast the encrypted telecast.  *See Plaintiff's Affidavit in Support of Plaintiff's Application for Default Judgment by the Court* concurrently filed with Plaintiff's original Memorandum (hereinafter "*Plaintiff's Affidavit*")).  In light of the fact that Defendants  must have committed wrongful acts in order to intercept, receive, and broadcast the *Program*, coupled with the ongoing piracy problems encountered in the satellite broadcast industry (as discussed in detail below), Plaintiff seeks statutory damages, up to the maximum permissible under statute, from the Court in this action.

Statutory damages are appropriate where actual damages are difficult to prove.  *Lauretex Textile Corp. v. Allton Knitting Mills, Inc*., 519 F. Supp. 730, 732 (S.D.N.Y. 1981).  The lack of adequate proof of any particular element causes the Court to rely, within its discretion, on the statutory limitations.  *F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 233 (1952).  In the instant case, as more fully discussed *infra*, it would be impossible to calculate the full extent of the profits lost by Plaintiff and the additional damages sustained by Plaintiff as a

1  result of the Defendants' unlawful actions.  Accordingly, it is appropriate for Plaintiff to elect to

2  receive statutory damages in the instant action.

3        In order to deter the unlawful use of communications such as the *Program*, Congress

4  specifically designed the Statutes to provide "both Prosecutor[s] and civil plaintiffs [with] the

5  legal tools they need to bring piracy under control." *Trademark & Satellite Acts, P.L.-6678, 1988*

6  *U.S. Cong. & Admin. News 7,* 5577, 5658; *see also U.S. v. Scott*, 783 F. Supp. 280, 281 (N.D.

7  Miss. 1992).  To reach these ends, the Statutes include severe penalties, both civil and criminal,

8  for those who intercept, receive and/or broadcast protected communications.  *See Scott*, 783 F.

9  Supp. At 281; *see generally* § 47 U.S.C. § 605(e).  Moreover, Congress has equated a violation

10  of the Statutes to a theft of service.  *See 1988 U.S. Code Cong. & Admin. News 7, 5577, 4642-*

11  *43*.  In 1988, in an effort to further deter theft, Congress amended the Statutes to provide for

12  more severe penalties for violations.  *Id.* at 5657.

13        As set forth within Plaintiff's *Affidavit*, the Defendants' interception, receipt, and

14  broadcast of the encrypted *Program* was not inadvertent.  Section 605(e)(3)(C)(iii) provides for

15  limited damages to the aggrieved party "[i]n any case where the court finds that the violator was

16  not aware and had no reason to believe that his acts constituted a violation of this section . . . .",

17  as stated by Congress, this type of situation occurs rarely:

18        [i]t is not intended that this provision serve in any way as a defense to
        determination of liability under subsection (a), but rather only as provision to be
19        exercised in the court's discretion for those rare instances of ignorance of the law
        on the part of one adjudged to have violated it.
20

21  *Cable Communications Policy Act*, P.L. 98-549, 5 U.S. Cong. News. '84 Bd. Vol. 8, 4745,

22  4751.  Instead, when Congress enacted the Statutes, it was specifically cognizant of the severe

23  impact of theft of various wire communications, including closed-circuit programming, such as

24  the *Program*.  As stated in the House Bill:

25        The Committee is extremely concerned with a problem which is increasingly
        plaguing the cable industry-the theft cable service.  This problem has taken on
26        many forms from the manufacture and sale of equipment intended to permit
        reception of cable services without paying for it, to apartment building dwellers
27        "tapping" into cable system wire into building's hallway that issued for providing
        service to a neighbor's apartment unit, to the sale by building superintendents of
28

cable converters left behind by previous tenants to new tenants.  Such practices do not only often permit one to obtain cable services without paying the installation and hookup costs, but also, for instance, involve individuals gaining access to premium movie and sports channels without paying for the receipt of those services.

Theft of services deprives the cable industry of millions of dollars of revenue each year which it should otherwise be receiving.  The Committee believes that theft of cable service poses a major threat to the economic viability of cable operators and cable programmers, and creates unfair burdens on cable subscribers who are forced to subsidize the benefits that other individuals are getting by receiving cable service without paying for it.

*Cable Communications Policy Act of 1984, House Report No. 98-934, 5 U.S. Cong. News.* '84 Bd. Vol. -6, 4655, 4720.  Moreover, according to Congress, these incidents threaten to undermine the satellite industry and adversely impact legitimate satellite dealers and satellite programmers who otherwise should be receiving payment for their programming or descrambling devices.  *See U.S. v. Scott*, 783 F.Supp. 280, 281 (N.D. Miss. 1992) (quoting 1984 *U.S. Code Cong. & Admin. News* 4655, 4746).

A.   Statutory Damages Under 47 U.S.C. § 605(e)(3)(C)(i)(II).

In light of the above observations, as its first basis for relief, Plaintiff requests statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II).  As indicated above, the amount of statutory damages to which Plaintiff is entitled for each violation of this section shall be not less than $1,000.00 nor more than $10,000.00 for each violation.  *Id.*  Plaintiff respectfully requests that this Court award up to the maximum $10,000 permissible under the statute.

As this Court observed in its September 14, 2009 Order, the case of *Joe Hand Promotions, Inc. v. Tidmarsh*, 2009 WL 1845090 (E.D.Cal. 2009) is instructive.  While *Joe Hand* awarded damages under both sections 605 and 553, Plaintiff agrees that the *Tidmarsh* Court did not undertake an analysis of the viability of awarding damages under both sections.  Respectfully, therefore, Plaintiff requests that, to the extent possible, this Court look to the award made under section 605 as well as take into account the aggregate award as representative of an appropriate punishment (While bearing in mind of course, that this Court may not award more than $10,000 per statutory violation).  In *Tidmarsh*:

///

> [T]he summons and complaint were properly served upon Defendant, her default was properly entered, and the complaint is sufficiently well-pled. By her default, Defendant has admitted to willfully violating the referenced statutes for purposes of commercial advantage. Although deterrence of future violations are important objectives of the statutes, the facts before the Court indicate that Defendant's establishment was not large, with a maximum capacity of approximately 50 people. . . . Plaintiff's investigator . . . noted it contained . . . a large television on one side of the establishment and a second, much smaller, television on the opposite side. [He] conducted three head counts while he was present: 23/27/29. He viewed the program on one television, a 55″ screen located in the right corner of the establishment. Given the relatively small impact of Defendant's actions, the Court finds that the amount of requested damages should be reduced.

*Id.* at *3.

Even though the *Tidmarsh* court found a "small impact," it nonetheless awarded the $10,000 maximum allowed under section 605(e)(3)(c)(i)(II). *Id.* The *Tidmarsh* Court also awarded an additional $10,000 in enhanced damages (the Court did not specify a division of this award between sections 605 and 553). *Id.* The facts of *Tidmarsh* are comparable to the facts here.

A similar analysis, leading to a similar result, was utilized in *J & J Sports Productions, Inc. v. Esquivel*, 2008 WL 4657741 (E.D.Cal. 2008), where the district court found:

> Here, the summons and complaint were properly served upon Defendant, her default was properly entered, and the complaint is sufficiently well-pled. By her default, Defendant has admitted to willfully violating the referenced statutes for purposes of commercial advantage. Although deterrence of future violations are important objectives of the statutes, the facts before the Court indicate that Defendant's establishment was not large, with a maximum capacity of 75 people. . . . Plaintiff's investigator . . . conducted three head counts while he was there, which were 35/35/35. He viewed the program on one television, a 27″ screen located on a wall of the restaurant. Given the relatively small impact of Defendant's actions, the Court finds that the amount of requested damages should be reduced.

*Id.* at * 3 (emphasis added).

Like *Tidmarsh*, the *Esquivel* court awarded total damages of $30,000, $10,000 under both sections 553 and 605 and an additional $10,000 in enhanced damages (the Court did not specify a division among the statutes). *Id.*

Another case in which a "minor" violation led to a maximum statutory damages award

was *J & J Sports Productions, Inc. v. Flores*, 2009 WL 1860520, *2 (E.D.Cal. 2009).[1]  In

*Flores,* there was no cover charge, no proof that the Defendants profited from their actions, and

the three head counts were 35/35/33.  Once again, this is comparable to the situation involving

Plaintiff herein; *see also J & J Sports Productions, Inc. v. George*, 2008 WL 4224616 (E.D.Cal.

2008) (Maximum statutory damages awarded where establishment had thirty person capacity

and no more than 20 people watching event at any given time, event was broadcast on one 27"

television, and there was no cover charge).

Other district courts in the United States have awarded the statutory maximum under

section 605 without regard to the underlying facts, but simply because of the unlawful

interception and the need for significant deterrence.  For example, in *Kingvision Pay-Per-View,*

*Ltd. v. Dosani*, 2006 WL 3316988 (S.D.Tex. 2006), the court held:

> Several factors present in this case favor granting the maximum statutory
> damages of $10,000.00, as requested. The record establishes that defendant
> broadcast the event and failed to appear in this suit. The record establishes the use
> of an unlawful device, making the violations willful. These factors, the difficulty
> in detecting unlawful interception, the widespread problem of piracy, the
> projected loss to plaintiff, and the need for an award sufficient to deter future
> piracy by defendants and others, weigh in favor of granting maximum statutory
> damages. Plaintiff has shown the basis for an award of $10,000.00 in damages
> under section 605(e)(3)(C)(i)(II).

*Id.* at 2.[2]  The same factors that led the *Dosani* Court to award $10,000 in statutory damages are

present here.  *See also J & J Sports Productions, Inc. v. Lopez*, 2008 WL 2915109, *4 (E.D.Cal.

2008) ("The Court also recognizes that deterrence of future violations is a significant objective

of §§ 553 and 605.  Accordingly, the Court will recommend that Plaintiff's application be

granted and that damages in the sum of $30, 000.00 be awarded to Plaintiff."); *J & J Sports*

*Productions, Inc. v. Rubio*, 2008 WL 4360883, *2 (S.D.Tex. 2008) ("Several factors . . . the

---

[1] Like *Tidmarsh* and *Esquivel*, *supra*, an award was made under both sections 553 and 605; the *total* statutory damages award was $20,000.

[2] In *Kingvision*, the "establishment contained seating for approximately 200 people, approximately 34 people were present, and each paid a cover charge of $3."  *Id.* at 2.  These factors, however, were not relevant to the court's award of statutory damages but, rather, as discussed below, the award of enhanced damages.

difficulty in detecting unlawful interception, the widespread problem of piracy, the projected loss to plaintiff, and the need for an award sufficient to deter future piracy by defendants and others, weigh in favor of granting maximum statutory damages. The plaintiff has shown the basis for an award of $10,000.00 in damages under section 605(e)(3)(C)(i)(II)"); *Kingvision Pay-Per-View Ltd. v. Gadson*, 2007 WL 2746780, *2-3 (M.D.N.C. 2007) (Awarding $10,000 in statutory damages and $10,000 in enhanced damages against a commercial establishment with a seating capacity of 40, 27 patrons viewing the event on 1 large screen television, and a five dollar cover charge.).

The above cases establish that in even where the violations do not appear particularly egregious, maximum statutory damages may be awarded.  Plaintiff respectfully requests that this Court consider these cases when determining whether to award Plaintiff up to the maximum permissible under statute.

B.    "Enhanced" Damages Under 47 U.S.C. § 605(e)(3)(C)(ii).

Next, Plaintiff respectfully and additionally requests enhanced damages pursuant to section 605(e)(3)(C)(ii).  Section 605(e)(3)(C)(ii) permits this Court, in its discretion, to award up to $100,000.00 in additional damages where "the violation was committed willfully and for the purposes of direct or indirect commercial advantage or private financial gain . . . ." 47 U.S.C. § 605(e)(3)(C)(ii).

The conclusion that the actions of defendants in cases such as these are "willful" has been clearly established.  *See Entertainment By J & J, Inc. v. Al-Waha Enterprises, Inc.*, 219 F.Supp.2d 769,  776 (S.D. Tex. 2002) ("Based on the limited methods of intercepting closed circuit broadcasting of pay-per-view events and the low probability that a commercial establishment could intercept such a broadcast merely by chance" courts have held the unauthorized display of such an event willful); *see also Garden City Boxing Club, Inc. v. Paquita's Café, Inc.*, 2007 WL 2783190 at *5 (S.D.N.Y. 2007);  *J & J Sports Productions, Inc. v. Garcia*, 2009 WL 2567891, *4 (S.D.Tex. 2009) ("The Defendant must have engaged in a deliberate act since 'signals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems.'") *quoting Time-Warner Cable of N.Y. v. Googies*

-9-

1   *Luncheonette, Inc.,* 77 F.Supp.2d 485, 490 (S.D.N.Y. 1999); *Joe Hand Promotions, Inc. v.*

2   *Martinez*, 2008 WL 4619855, *6 (S.D.N.Y. 2008) ("The acquisition of an encrypted signal by

3   defendants undoubtedly required some affirmative actions that imply both a degree of technical

4   sophistication and a desire to obtain a benefit to which defendants were not entitled.").

5       In addition, the fact that such an interception is done for commercial advantage is also

6   firmly decided.  "A defendant who intercepts signals and broadcast programming without

7   authorization 'in a place of business where certain events are shown to the public' is generally

8   held to have acted willfully and for purposes of commercial advantage." *Garden City Boxing*

9   *Club, Inc. v. Batista,* 2007 WL 4276836, *5 (E.D.N.Y. 2007); *citing Am. Cablevision of Queens*

10  *v. McGinn*, 817 F.Supp. 317, 320 (E.D.N.Y. 1993) (further citation omitted); *see also Joe Hand*

11  *Promotions, Inc. v. Garcia*, 546 F.Supp.2d 383, 386 (W.D.Tex. 2008) ("Because of the extreme

12  unlikelihood that Defendant could inadvertently have acquired the signal to display the fight,

13  coupled with its failure to file an answer denying Plaintiff's allegations on this issue, the Court

14  finds that Defendant [acted] willfully and for purposes of direct or indirect commercial

15  advantage.") (statutory citation omitted).

16      Finally, "the court may draw an inference of willfulness from a defendant's failure to

17  appear and defend an action in which the plaintiff demands increased statutory damages based

18  on allegations of willful conduct." *Garden City Boxing Club, Inc. v. Frezza*, 476 F.Supp.2d 135,

19  138 (D. Conn. 2007); *quoting J & J Sports Productions, Inc. v. Drake,* 2006 WL 2927163, *5

20  (E.D.N.Y. 2006).

21      With respect to the proper amount of enhanced damages, the case of *Joe Hand*

22  *Productions, Inc. v. Haddock*, 2009 WL 2136117 (E.D.Cal. 2009) is instructive.  In *Haddock*, the

23  district court awarded a total of $50,000 in damages to Plaintiff.  *Id.* at *2.  The court awarded

24  $25,000 under both sections 553 and 605; while not specifically broken down, at a minimum, the

25  enhanced damages must have been $15,000.  *See* 47 U.S.C. § 605(e)(3)(c)(i)(II) (setting maximum

26  statutory award at $10,000).  In *Haddock*, the Court found that because the television was

27  broadcast on five televisions and because the establishment was located in a "relatively urban

28  city" with a population in excess of 100,000, the impact was more than minimal.

1    Next, the case of *Kingvision Pay-Per-View, Ltd. v. Gutierrez*, 544 F.Supp.2d 1179

2  (D.Colo. 2008), also provides a good analogy.  In *Gutierrez* there were 24 patrons in the

3  establishment and the court awarded $5,000 in statutory damages under section

4  605(e)(3)(c)(i)(II).  Id. at 1184.  In determining the appropriate enhanced damages award, the

5  district court noted that the actions of defendants were willful, the problems of piracy were

6  pervasive, and that the award needed to serve as a deterrent.  *Id.* at 1185.  The court, however,

7  also found certain factors *did not* support a substantial damages award.  *Id.*  (emphasis added).

8  The Court observed that, "Plaintiff presents no evidence of prior violations; Plaintiff provides no

9  evidence of significant earnings by Defendants that night; Plaintiff's loss of revenue for one

10  establishment is not significant; there is no evidence of advertising to entice a larger crowd; the

11  restaurant did not have a cover charge; and there is no evidence that the restaurant charged a

12  premium for food and drinks that night."  *Id.*  After taking all of these factors that militate

13  against enhanced damages into account, the court still awarded an additional $15,000.00.  *Id.*

14    In *Garden City Boxing Club, Inc. v. Frezza*, 476 F.Supp.2d 135 (D. Conn. 2007), the

15  district court noted that the violations were not particularly egregious.  There was only one

16  illegal interception, only 33 people were present in the establishment and only a minimal profit

17  was made by the defendants.  *Id.* at 139.   In addition, it was not established that defendants had

18  ample financial resources.  *Id.*   Even under these circumstances, however, the court noted:

19  plaintiff has established knowing and willful violation, for commercial advantage
    and/or private financial gain, and explains the loss in revenue and detrimental
20  effect upon lawful residential and commercial cable customers as a result of
    signal piracy, which interest and concomitant need for deterrence other courts
21  have recognized . . . Accordingly, taking into account awards granted by other
    courts in this district under similar circumstances, the Court will award $5,000 in
22  statutory damages, plus an additional $10,000 for the willful nature of defendants'
    violation, done for commercial advantage and/or private financial gain.
23

24  Id. at 139-40 (emphasis added) (internal citation omitted).

25    In *Kingvision Pay-Per-View, Ltd. v. Dosani, supra, w*ith respect to enhanced damages

26  under section 605(e)(3)(C)(ii) (called "punitive damages" by the court) the court noted:

27  The record shows that defendants showed the Event for the purpose of increasing
    the business, customers, and sales revenue. The record does not indicate the
28  amount of profit, if any, defendants derived from unlawfully broadcasting the

Event. The record does show that the defendants' establishment contained seating for approximately 200 people, approximately 34 people were present, and each paid a cover charge of $3. Based on the affidavit showing an intentional violation, this court finds that the record supports a finding of a willful violation an award of $*25,000.00* additional damages beyond the $10,000.00.

*Id.* at *2 (emphasis added).

   *Dosani* is also substantially similar to the case herein.  While Plaintiff did not charge a cover, and the establishment in *Dosani* was larger, the number of people present was comparable and it is clear that in both cases the event was shown for the purpose of increasing business, customers and sales revenue.

   Other cases that awarded substantial enhanced damages in a default situation have included *KingVision Pay-Per-View, Ltd. v. Guerra*, 2007 WL 3001659 (S.D. Tex. 2007) (awarding statutory damages of $10,000 and enhanced damages of $50,000)[3]; *Joe Hand Promotions Inc. v. Chapa*, 2009 WL 2215124 (S.D.Tex. 2009) (finding requested damages of $10,000 under section (i)(II) and $50,000 under section (ii) to be reasonable)[4]; *Rubio, supra,* (awarding $25,000 in enhanced damages under section 605(e)(3)(C)(ii)).

   In *Innovative Sports Marketing v. Medeles,* 2008 WL 1758886 (S.D.Tex. 2008), with respect to enhanced damages under section 605(e)(3)(C)(ii) the court noted that, "Because the defendants have not contested the allegations of willfulness, and default judgment has been granted, the court considers the defendants' actions to be willful and for the purpose of commercial advantage."  *Id.* at *2.  The court awarded an increase in damages of $50,000.00, "because the defendant is considered to have admitted willfulness, and to deter future violations of § 605(a)." *Id.*; *citing Al-Waha*, 219 F.Supp.2d at 716 for ("The deterrence of future violations ... is one of the objectives of the statute."); *see also Garden City Boxing Club, Inc. v. Batista*,

---

[3] The *Guerra* Court did not address the underlying specific facts of the case.

[4] *Chapa* was not a default case.  The defendants originally had Answered and the case was conditionally dismissed while the parties worked on a settlement.  *Id.* at *1.  When the parties were unable to reach an agreement, Plaintiff moved to reinstate the case.  *Id.*  The Defendants took no further action and, ultimately, summary judgment was granted in Plaintiff's favor.  *Id.*

1  2007 WL 4276836, *4 (E.D.N.Y. 2007) ("In exercising [its] discretion [to award enhanced

2  damages], courts should be mindful of the difficulty in detecting such violations and the

3  widespread problem of piracy . . . . The court should therefore grant damages in an amount which

4  achieves the deterrent purposes of the statute.").

5  An interesting approach to enhanced damages was used by the Central District of

6  Illinois in *Joe Hand Promotions, Inc. v. Cat's Bar, Inc.,* 2009 WL 700125, *2 (C.D. Ill. 2009).

7  In *Cat's Bar* the court awarded $10,000 in statutory damages and an additional $6,000 in

8  enhanced damages because the actions of the defendant were willful.  *Id.*  In the *Cat's Bar* case,

9  there were only 8 people viewing the event and there was no cover charge.  *Id.*  In determining

10  the $6,000 enhanced penalty, the court multiplied the number of patrons by the fee the defendant

11  should have paid for the license.

12  Next, while it may be rare, district courts have awarded the statutory maximums in piracy

13  cases.  For example, in *J & J Sports Productions, Inc. v. Lang*, 2008 WL 2917165, *1

14  (W.D.N.Y.), the court awarded $10,000 pursuant to section 605(e)(3)(C)(i)(II) and $100,000

15  pursuant to section 605(e)(3)(C)(ii).  The *Lang* decision did not discuss the specific facts of the

16  case.  *See id.*  In fact, a district court in California also has awarded the "maximum" under

17  section 605.  *See J & J Sports Productions, Inc. v. Ferreyra*, 2008 WL 4104315 (E.D.Cal.

18  2008).[5]  Plaintiff acknowledges that *Ferreyra* involved a repeat offender and that the district

19  court took that fact into account in making its award.  *See id.*  In that regard, this case is being

20  presented simply as an example that "maximum" damages awards have occurred.

21  Plaintiff respectfully requests that this Court consider the foregoing cases when

22  determining an appropriate enhanced award to Plaintiff.

23  C.     Nominal Damages Have Proven Insufficient To Combat Piracy.

24  Finally, Plaintiff would like to address those cases that have awarded more nominal

25  damages.  *See e.g. J & J Sports Productions, Inc. v. Medinarios*, 2008 WL 4412240 (N.D.Cal.

26  2008) (Awarding $1,000 in statutory damages and $5,000 in enhanced statutory damages); *J & J*

27

28  [5] It appears that the *Ferreyra* Court read section 605 as permitting a total award of $100,000, not $110,000.  *See id.* at *1

1   *Sports Productions, Inc. v. Manzano*, 2008 WL 4542962 (N.D.Cal. 2008) (Awarding $250 in

2   total damages); *J & J Sports Productions, Inc. v. Man Thi Doan*, 2008 WL 4911223 (N.D.Cal.

3   2008) (Awarding $2500 in total damages).  As the Court is aware, and as a simple Lexis or

4   Westlaw search reveals, there are hundreds of these types of cases throughout the nation.

5   Plaintiff respectfully submits that those cases that award nominal damages are a major reason

6   why there has been little to no decrease in piracy.

7          As noted in *J & J Sports Productions, Inc. v. Castrillon*, 2009 WL 1033364, *3

8   (E.D.N.Y. 2009), "Absent substantial financial penalties, the defendant will likely continue to

9   illegally display the plaintiff's programming and other such establishments will follow suit. . . .

10  The plaintiff cannot practicably investigate all these infractions, nor should they be expected to

11  do so." *Id.* (internal citation omitted).   "In order to preserve the plaintiff's livelihood, the

12  defendant must be held accountable for an amount significant enough to deter such conduct.

13  Absent such a deterrent, the defendant and other potential infringers will be encouraged to

14  violate the law, as infringement would be more cost effective than contracting with the plaintiff."

15  *Id.*

16         As a willful violator of the applicable statutes, Defendants must be held accountable for a

17  substantial amount above the market value of the sublicense fees to broadcast the *Program*.

18  Otherwise, other commercial establishments "would be encouraged to violate the law knowing

19  the full extent of their liability would not exceed what they would have to pay for a license on

20  the open market."  *Fallaci v. New Gazette Literary Corp.*, 568 F.Supp. 1172, 1174 (S.D.N.Y.

21  1983).

22  ///

23  II.    PLAINTIFF IS ENTITLED TO DAMAGES FOR CONVERSION.

24         Finally, with respect to the conversion claim, damages for conversion are based on the

25  value of the property at the time of the conversion (plus interest).  Cal. Civ. Code § 3336; *see*

26  *Krueger v. Bank of America* (1983) 145 Cal.App.3d 204, 215, 193 Cal.Rptr. 322.  In addition, the

27  plaintiff in a conversion action is entitled to, "A fair compensation for the time and money

28  properly expended in pursuit of the property."  Cal. Civ. Code § 3336.  In this case, Plaintiff

1   seeks $1,800.00 in conversion damages, the amount Defendants would have been required to pay

2   had it ordered the *Program* from Plaintiff.

3

4                                        **CONCLUSION**

5          The unauthorized interception, receipt and broadcast of the *Program* and other closed-

6   circuit programming threatens the economic viability of the promotions industry.  There are no

7   countervailing social or policy considerations that justify the unauthorized interception of these

8   broadcasts.  *See ON/TV of Chicago v. Julien*, 763 F.2d 839, 843 (7th Cir. 1985); *Subscription*

9   *Television of Greater Washington v. Kaufman*, 606 F. Supp. 1540, 1544 (D.D.C. 1985).

10         As a result of theft by the Defendants and others, Plaintiff has lost and will continue to

11  lose legitimate commercial customers that are unwilling and financially unable to compete with

12  unauthorized locations, like Los Picantes Restaurant, that exhibit sports and other closed-circuit

13  programming in an unlicensed manner.  Because these unauthorized commercial establishments

14  offer programming to their patrons for no fee (or for a fee which is less than the authorized

15  establishments charge), the legitimate commercial establishments cannot attract paying customers

16  to offset their sizeable investments in commercial licensing and event promotion, and as a result,

17  incur substantial financial loss.  Ultimately, this eliminates the potential that they will continue to

18  purchase commercial exhibition licenses from the Plaintiff in the future.

19         Theft of closed-circuit broadcasts, such as the *Program*, by unauthorized commercial

20  establishments adversely impacts both Plaintiff and its lawful customers.  Plaintiff pays

21  substantial fees to promoters to obtain the exhibition rights to sublicense the broadcast of closed-

22  circuit programming to authorized commercial establishments.  Plaintiff's *exclusive* source of

23  revenue is the sublicense fees it charges to authorized commercial establishments for the right to

24  broadcast events like the *Program*.  The corrosive effect of commercial signal theft permanently

25  destroys Plaintiff's lawful customer base.  *See Cox Cable Cleveland Area, Inc. v. King*, 582 F.

26  Supp. 379, 381 (E.D. Ohio 1983).

27         Further, as a direct and proximate result of piracy, Plaintiff has suffered severe damage to

28  its goodwill and professional reputation, and has invariably lost its right and ability to control

and receive fees for transmission of the *Program*.  *See Quincy Cablesystems, Inc. v. Sully's Bar*, 640 F.Supp. 1159, 1161 (D.Ma. 1986).  When negotiating sublicense fees, Plaintiff represents to commercial establishments that it exercises supervision over the commercial distribution of its programming.  When an unauthorized commercial establishment intercepts, receives, and broadcasts closed-circuit programming, such as the *Program*, Plaintiff's reputation and goodwill suffers irreparable damage with its existing and prospective commercial customers from what appears to be a misrepresentation of such capabilities on its own part.  Ultimately, piracy simply devaluates the product being lawfully developed, marketed, licensed, or sold to the detriment and injury of all.

In light of the foregoing, Plaintiff respectfully requests that this Court use its statutory discretion to award Plaintiff adequate compensation, up to the maximum permissible under statute, from the Defendants for the losses suffered herein.  The sustenance of Plaintiff's small family business concern depends upon the willingness of commercial establishments to pay the Plaintiff sublicense fees for its programming, and the Courts' willingness to deal fairly but firmly with the rising tide of theft of Plaintiff's intellectual property.  Piracy is nothing less than outright theft and a firm judicial hand is required to stop this predatory behavior and compensate the aggrieved accordingly.

Respectfully submitted,


Dated:  October 16, 2009          */s/ Thomas P. Riley*
                                  **LAW OFFICES OF THOMAS P. RILEY, P.C.**
                                  By: Thomas P. Riley
                                  Attorneys for Plaintiff
                                  J & J Sports Productions, Inc.

## <u>PROOF OF SERVICE (SERVICE BY MAIL)</u>

I declare that:

I am employed in the County of Los Angeles, California.  I am over the age of eighteen years and not a party to the within cause; my business address is First Library Square, 1114 Fremont Avenue, South Pasadena, California 91030.  I am readily familiar with this law firm's practice for collection and processing of correspondence/documents for mail in the ordinary course of business.

On October 16, 2009, I served:

**Memorandum of Points and Authorities in Support of Plaintiff's Application for Default Judgment by the Court**

On all parties referenced by enclosing a true copy thereof in a sealed envelope with postage prepaid and following ordinary business practices, said envelope was duly mailed and addressed to:

Hortencia Bustamante Brito (Defendant)
3568 Sesame Road
Moreno Valley, CA 92555

Jose Bulmaro Brito (Defendant)
13568 Sesame Road
Moreno Valley, CA 92555

I declare under the penalty of perjury pursuant to the laws of the United States that the foregoing is true and correct and that this declaration was executed on October 16, 2009, at South Pasadena, California.

Dated:  October 16, 2009                    */s/ Maria Baird*
                                                         **MARIA BAIRD**